[Civ. No. 22603.   First Dist., Div. Two.   Oct. 18, 1965.]

ROBERT W. ALBERS, Plaintiff and Respondent, v. STATE BOARD OF EQUALIZATION, Defendant and Appellant.

Thomas C. Lynch, Attorney General, Ernest P. Goodman and John J. Klee, Jr., Deputy Attorneys General, for Defendant and Appellant.

Lemuel D. Sanderson and Hugh T. Fullerton for Plaintiff and Respondent.

AGEE, J.—The lower court ordered defendant Board of Equalization to refund $55.57 to plaintiff, paid by him as sales tax on transactions of the type described below. The board appeals.

The facts are not in dispute and the sole issue is whether such transactions are taxable as sales of tangible personal property within the meaning of the California Sales and Use Tax Law. (Rev. & Tax. Code, § 6001 et seq.)[1]

Plaintiff is a self-employed commercial draftsman who maintains his own office. He makes detailed drawings for architects, engineers and business firms based upon specifications and other data furnished by the person or firm placing the order.

Plaintiff's charges are based upon the time actually spent by him in producing the drawings and are computed at a straight hourly rate.

The drawings are made on paper which is either furnished by the customer or by the plaintiff. In either instance, the drawing bears the name of the customer, not that of plaintiff, and becomes the customer's property upon completion and delivery.

Plaintiff is not an architect and none of the concepts, ideas or designs depicted in the drawings produced by him are of his own determination. Neither is plaintiff an engineer nor are any of the specifications or other details shown in such drawings determined by him.

The portion of section 6006 which is specifically applicable

---

[1] All section references are to this code.

herein is: " 'Sale' means and includes: . . . (f) A transfer for a consideration of the title or possession of tangible personal property which has been produced, fabricated, or printed to the special order of the customer. . . ."

*People* v. *Grazer* (1956) 138 Cal.App.2d 274 [291 P.2d 957], held this provision to be applicable to the following facts: "that during the tax period[2] Grazer was engaged in the business of taking X-ray pictures of persons referred to him by physicians and surgeons; that he employed a qualified radiologist to read the X-ray pictures and to report his findings to the referring physician; that the pictures were at all times the property of Grazer and were always kept in his possession except during any period that a picture ordered by a physician was taken out of Grazer's laboratory for the purpose of examination by the physician who had ordered it; that the pictures were always returned to Grazer when the physician had completed his use thereof in connection with past treatment; that Grazer kept the pictures on file in his laboratory at all other times; that Grazer took no pictures except on request of a licensed physician, surgeon, dentist or osteopath and never delivered a picture directly to a patient for his use; . . . that the fee charged by him was principally for services performed in picture taking and developing, and in the payment of the fees of the radiologist to report his findings to the referring physician or surgeon; that the cost of the materials and supplies used in taking the pictures was only a small part of the total charge made by Grazer for picture taking, producing, developing and for the radiologist's report thereon; that Grazer never read or reported on any X-ray picture taken by him; . . ."

A judgment holding that no sales tax was due or payable was reversed, the appellate court stating: "To be sure, the raw materials consumed in producing that which he ordered may have cost the laboratory only a very small part of the charge made. The expense of the producer of the pictures is almost entirely the cost of the skilled services of the radiologist and the technicians and the use of equipment which is generally quite costly. But the price charged for all taxable transfers is more often than not largely a charge for services rendered in connection with the tangible object transferred. That Grazer retained title to the pictures is immaterial. The

---

[2]This period *ended* on June 1, 1951, the effective date of section 6019, which provided: "Producers of X-ray films for the purpose of diagnosis are the consumers of materials and supplies used in the production thereof." This section was renumbered section 6020 in 1953.

tax is also laid upon a transfer of possession and the evidence shows and the court found that these pictures served the only purpose for which they were required when they passed into the possession of those who ordered them for use in diagnoses and treatment of their patients. This was such an effective transfer of possession as to justify the imposition of the tax.''

The facts in *Grazer* are closely parallel to the facts in the instant case. In each, the *true object of the transaction* is the finished article, the X-ray film in *Grazer* and the drawing in the instant case.

Plaintiff herein was not paid to conceive or to dictate any of the ideas, concepts, designs, or specifications in the drawings made by him. He simply applied his ability to the details supplied by the customer for the purpose of putting such details down on paper and thereby producing a drawing for use by the customer. In other words, the customer was purchasing the detailed drawing for his use, he was not purchasing the design or specifications pictured in the drawing.

We hold that the transactions involved in the instant case are sales of tangible personal property within the meaning of section 6006. This conclusion finds support in the decided cases of other jurisdictions having sales tax statutes similar to ours. (*District of Columbia* v. *Norwood Studios, Inc.* (1964) 336 F.2d 746; *Glushak* v. *City of New York* (1958) 6 App.Div.2d 381 [178 N.Y.S.2d 33]; *Green* v. *Sgurovsky* (Fla.App. 1961) 133 So.2d 663.)

In the order cited, these cases involve (1) production of a series of motion pictures for television showing, (2) pictorial representations of proposed buildings from plans furnished by builders and architects, and (3) ''renderings'' of artist, consisting of bristol board representations from sketches and designs submitted to him by architects, builders and advertising agencies.

The trial court's findings of fact, conclusions of law, and judgment are confined to the *sole* issue set forth in the pre-trial conference order, to-wit: ''Did the plaintiff in conducting his business make sales of tangible personal property within the meaning of Section 6006 of the Revenue and Taxation Code.''

Plaintiff's counsel concluded his opening statement at the hearing below by stating: ''Anyway, that is the gist of this thing, whether Mr. Albers is producing something that is taxable under the sales tax, and I would like to put Mr. Albers on the stand.''

The board's attorney then commented that "I was handed a brief of amicus curiae and [*sic*] which I noticed one of the headings is something about constitutionality. And in that regard I would like to say in my opening statement as to what the issue is, to simply read from the pre-trial order which sets forth the issue, and that is: 'Did plaintiff in conducting his business make sales of tangible personal property within the meaning of Section 6006 of the Revenue and Taxation Code?' "

Thus, counsel were expressly advised of the board's position that the hearing was to be confined to this one issue. The only evidence presented at the trial was the testimony of the plaintiff, six examples of his drawings and a letter from the board, after its representatives had investigated the matter, stating that "we have concluded that . . . Mr. Albers is a retailer of the drawings and that his total receipts for making the drawings are subject to the tax."

No motion was *ever* made to amend the pretrial conference order to include any additional issue. "If any party or the court deems it [the pretrial order] insufficient or incorrect, it may be modified at any time before trial under the ample provisions made in the rules therefor.[3] It may not be ignored. It limits the trial issues." (*Thompson* v. *Guyer-Hays,* 207 Cal.App.2d 366, 372 [24 Cal.Rptr. 461]; *Oliver* v. *Swiss Club Tell,* 222 Cal.App.2d 528, 541 [35 Cal.Rptr. 324].)

We find no reason to extend our decision herein beyond the issue presented by the record. The judgment is reversed.

Shoemaker, P. J., and Taylor, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 15, 1965.

---

[3]Rule 216, California Rules of Court, provides: "When filed, the pretrial conference order becomes a part of the record in the case and, where inconsistent with the pleadings, controls the subsequent course of the case unless modified at or before trial to prevent manifest injustice. Any motion so to modify before trial shall be heard by the pretrial conference judge or, if not available, before the presiding judge or, if none, before any judge sitting in that court."