[No. B003699. Second Dist., Div. One. Sept. 20, 1984.]

SANTA FE ENERGY COMPANY, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## COUNSEL

John H. Ernster, Thomas A. Lance, Mark A. Garmus and Clay M. Smith for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Philip C. Griffin, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff Santa Fe Energy Company (Santa Fe) appeals from a summary judgment granted in favor of defendant California Board of Equalization (Board) and from the denial of its own motion for summary judgment.

### STATEMENT OF FACTS

On September 9, 1976, Santa Fe Industries, Inc. (Santa Fe Industries), plaintiff's parent company, entered into an agreement of sale with Westates Petroleum Company (Westates). Westates was engaged in the business of exploration, development and production of crude oil. Santa Fe Industries purchased all of Westates' assets with the exception of certain excluded assets and assets and properties located outside North America.

The agreement of sale provided that Santa Fe Industries could assign any or all of its rights and duties under the contract to one or more of its wholly owned subsidiaries, and Westates would render performance of its obligations to the subsidiaries. Prior to the closing of the transaction, Santa Fe Industries did assign all of its rights and duties pertaining to California to Chanslor-Western Oil and Development Company (Chanslor-Western), a wholly owned subsidiary. Plaintiff is the successor-in-interest, by statutory merger, of Chanslor-Western.

Westates' assets included tangible personal property. Initially, Westates paid no California sales tax on the transfer of those assets. Following an audit, the Board notified Westates that a deficiency in sales and use taxes in the amount of $125,643.48 and interest in the amount of $27,146.75 were due for the period commencing July 1, 1975, and ending January 21, 1977.

On February 6, 1979, Santa Fe paid the Board $147,819.27, the amount attributed by the Board to the California tangible personal properties sold by Westates.

Prior to the sale of its assets to Santa Fe Industries, Westates had neither sold personal property at retail nor consumed any of the crude oil it produced; rather all crude oil produced was sold for the purpose of refining or processing into gasoline, fuel oil or other petroleum products.

Santa Fe filed suit against the Board to recover the sales tax. Both Santa Fe and the Board sought summary judgment. Santa Fe's motion was denied; the Board's motion, however, was granted.

## CONTENTIONS

■ Plaintiff contends that Westates' sale of assets was an occasional sale pursuant to Revenue and Taxation Code section 6367 and that as such, the receipts of the sale were entitled to an exemption from the sales tax.

## DISCUSSION

■ Plaintiff essentially contends that the Board was not entitled to collect sales tax on the receipts of the sale of Westates' assets. We disagree.

Revenue and Taxation Code section 6051 provides "For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers at the rate of . . . of the gross receipts of any retailer from the sale of all tangible personal property sold at retail in this state . . . ."[1] Thus, it is apparent that all retailers must pay sales tax for the privilege of selling tangible personal property. In order to settle the instant dispute, therefore, we must determine (1) whether Westates was a retailer, (2) whether the sale of Westates' personal property was a retail sale and (3) whether Westates' property was tangible personal property. An affirmative answer to all three inquiries will demonstrate the propriety of the trial court's determination.

The second inquiry is most easily answered, for in its brief to this court plaintiff stated, "Appellant, Santa Fe, contends that Westates' sale of its assets was an 'occasional sale', and was therefore exempt from sales tax on the transfer of said tangible personal property, based upon the following *uncontested* facts: [¶] 1. Westates made *no retail sales* of assets, *other than the corporate assets which it sold to Chanslor-Western Oil and Development Company* (Appellant's predecessor), . . ." Thus, plaintiff clearly has conceded that the sale of Westates' assets was a "retail sale." (*Estate of Kretschmer* (1965) 232 Cal.App.2d 789, 790 [43 Cal.Rptr. 121].)

The third inquiry is also easily answered. Tangible personal property is defined as "personal property which may be seen, weighed, measured, felt, or touched, or which is in any other manner perceptible to the senses." (§ 6016.) Inasmuch as crude oil, the assets sold by Westates, can surely be

---

[1]Unless otherwise indicated, all section references herein refer to the Revenue and Taxation Code.

"seen, weighed, measured, felt [and] touched," there can be no doubt that the property sold was tangible personal property within the meaning of the Revenue and Taxation Code.

Finally, in order to determine the existence of the first criterion, whether Westates was a retailer, a "*seller* who makes any retail sale or sales of tangible personal property. . . ." (§ 6015; italics added), we must know whether Westates was a "seller" and whether Westates sold tangible personal property. Because the latter inquiry has already been settled in the affirmative, we turn to the determination of whether Westates was a "seller" and therefore, a retailer. According to section 6014, a "seller" is "every person engaged in . . . selling tangible personal property of a kind the gross receipts from the retail sale of which are required to be included in the measure of the sales tax."

Plaintiff cites *Davis Wire Corp.* v. *State Bd. of Equalization* (1976) 17 Cal.3d 761 [132 Cal.Rptr. 133, 553 P.2d 229] in support of its assertion that Westates was not a "seller" and therefore, not a "retailer." Plaintiff's reliance is misplaced, however. In *Davis Wire,* our Supreme Court determined that the sale of the capital assets of two paper mills was a sale subject to the imposition of the sales tax. There, as here, the parties had agreed that the goods sold in the contested transaction had been sold at retail. As here, neither mill had previously engaged in retail sales. The court concluded, however, that both mills were "sellers" within the meaning of section 6014 inasmuch as the assets sold "*were* suited to retail sale." (*Id.,* at p. 764; italics original.) The court stressed that "section 6014 requires only that the goods be '*of a kind*' that their retail sale would be taxable; it does not require that the goods must actually have been sold at retail by the manufacturer or, for that matter, by anyone else." (*Id.,* at pp. 764-765; italics original.)

We reject plaintiff's assertion that *Davis Wire* establishes two distinct tests for the identification of a party as a "seller." Plaintiff contends the test requires both that the products sold be of a kind which has any conceivable retail use and that the vendor be engaged in the sale of taxable or nontaxable goods. Plaintiff seeks to avoid the appellation "seller" by relying on the fact that Westates sold its crude oil at wholesale and not at retail. We direct plaintiff's attention, however, to *Davis Wire* which establishes clearly that the characterization of a party as a "seller" within the meaning of section 6014 depends entirely upon the *suitability* of the assets to retail sale.

Plaintiff seeks to distinguish *Davis Wire,* however, by relying on *Glass-Tite Industries, Inc.* v. *State Bd. of Equalization* (1968) 266 Cal.App.2d

691 [72 Cal.Rptr. 244]. In *Glass-Tite,* the court held that a manufacturer of subassembly units was not properly characterized as a "seller," and was, therefore, entitled to the occasional sales exemption from the sales tax. Plaintiff analogizes the sale in the instant case to that analyzed in *Glass-Tite* by characterizing the instant sale as a sale of tangible personal property to be later incorporated into a manufactured article which itself would be sold at retail. (See Cal. Admin. Code, tit. 18, § 1525, subd. (b).) ▇ Again, plaintiff's reliance is misplaced, for the *status of "seller"* is determined solely by the determination of the retail salability of the product, not by the intent of the purchaser. The subassemblies in *Glass-Tite* were not usable in their present form; rather they were sold "made to order" so that they could be integrated by other manufacturers into a final product. Therefore, the subassemblies were clearly not salable "at retail"; the court's discussion did not focus on the characterization of a "seller."

▇ In the instant case, the crude oil sold by Westates could have been sold at retail in its present form. The fact that it was sold for processing into petroleum products is irrelevant and has no bearing on the determination of whether Westates was a "seller." Plaintiff's contention relates not to the determination of whether Westates was a "seller," but rather to the determination of whether the instant transaction was a sale "at retail," a fact conceded by plaintiff. (*Simplicity Pattern Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 900 [167 Cal.Rptr. 366, 615 P.2d 555]; *Kaiser Steel Corp.* v. *State Board of Equalization* (1979) 24 Cal.3d 188 [154 Cal.Rptr. 919, 593 P.2d 864].)

▇ Plaintiff proffers an additional argument in order to avoid Westates' characterization as a "seller." Plaintiff asserts that the gross receipts of the sale of Westates' property should have been exempted from the sales tax by section 6367 which provides in pertinent part, "There are exempted from the taxes imposed by this part the gross receipts from occasional sales of tangible personal property . . . the transfer of which to the purchaser is an occasional sale." The dispute centers, therefore, on whether the sale of Westates' crude oil was "of a kind the gross receipts from the retail sale of which are required to be included in the measure of the sales tax" (§ 6014) or whether the sale was an "occasional [sale] of tangible personal property," exempt from taxation.

An "occasional sale" is limited by section 6006.5, subdivision (a), to "A sale of property not held or used by a seller in the course of activities for which he is required to hold a seller's permit . . . ." We cannot agree, however, that the sale of Westates' assets was an "occasional sale." Inasmuch as "Every person desiring to engage in or conduct business as a seller

within this state shall file with the board an application for a permit for each place of business" (§ 6066), the sale of Westates' assets was clearly a sale by a seller "required to hold a seller's permit" (§ 6006.5). Because Westates was "required to hold a seller's permit," the instant sale does not fall within the narrow confines of the "occasional sale" exemption.

■ There can be no doubt, therefore, that Westates was properly characterized as a "seller" by both the trial court and the Board. Inasmuch as Westates was a seller which made a sale at retail, its characterization as a "retailer" was also proper. In sum, we conclude that the trial court's determination that the sale of Westates' assets was subject to the imposition of the sales tax was correct, for Westates was a retailer, the sale of Westates' property qualifies as a sale at retail and Westates' property was tangible personal property.[2] (§ 6051.)

The judgment is affirmed.

Lillie, J.,* and Carstairs, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 12, 1984.

---

[2]We note that California Administrative Code, title 18, section 1595, subdivision (e) provides support for our conclusion, despite plaintiff's assertion to the contrary. Subdivision (e) provides that a person may be exempt from the sales tax by establishing "that he has made only one retail sale and that his sales for resale are of property in a form which is *not suitable for retail sale* and which is never sold at retail by him or by other persons." (Italics added.)

*Assigned by the Chairperson of the Judicial Council.