[No. AO16108. First Dist., Div. Two. Jan. 31, 1983.]

INTELLIDATA INCORPORATED, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

COUNSEL

Alexander F. Eagle III and Eagle, Williams & Courtney for Plaintiff and Appellant.

George Deukmejian, Attorney General, Edward P. Hollingshead and Charles C. Kobayashi, Deputy Attorneys General, for Defendant and Respondent.

OPINION

MILLER, J.—In this action we consider whether transactions between key-punch service companies and their customers are properly taxable as sales of

tangible personal property within the meaning of the California Sales and Use Tax Law. (Rev. & Tax. Code, § 6001 et seq.)[1]

The underlying facts in this case are generally undisputed. Intellidata Incorporated (hereinafter plaintiff) is a computer service bureau. Among other operations it provides keypunching services for corporations that own their own computer. The keypunching service may be described as follows:

Plaintiff's customer delivered raw data such as sales invoices, inventory cards, billings, etc. Plaintiff was instructed on what information from each such business record must be transposed onto computer-readable keypunch cards. The keypunch cards, supplied by plaintiff, come in a standard size and shape and, at the time in question, were universally used in the data processing industry. Data was transposed on to the cards by use of a keypunching machine which has alphabetic letters the same as a typewriter and a numerical keyboard similar to a 10-key adding machine. The skills of a keypunch operator are similar to those of a typist.

After plaintiff's employees keypunched the cards, they were delivered to plaintiff's customers. The customer used the cards to input the information into its computer. After the cards were read by the computer they had no further use to the customer and were usually destroyed or recycled.

Plaintiff purchased the cards and paid the tax on them. However, plaintiff's customers were not billed for the cards used. Plaintiff considered the consumption of the cards to be part of the hourly rate it charged its customers for the service; the cost of the cards constituting approximately 2 percent of the overall cost to the customer.

After having paid over $10,000[2] to defendant for sales tax on its keypunching services and exhausting its administrative remedies, plaintiff brought the instant action for recovery of the collected sales tax on July 18, 1979. Following a trial before the court in which the parties presented both oral and documentary evidence, the court ruled that plaintiff take nothing by its complaint and this appeal followed.

Plaintiff's principal contention, both at trial and on appeal, is that gross receipts from the sale of keypunching services are exempt from sales tax because the true object of the transactions between plaintiff and its customers are the services rendered by plaintiff and not the media on which the services are delivered.

[1]All code sections will refer to the Revenue and Taxation Code unless otherwise indicated.

[2]Although plaintiff's complaint alleged that it had paid defendant $12,038.54, the trial court found that plaintiff had paid only $10,533.

Pursuant to section 6051[3] a tax is imposed upon each retail sale made in California. This tax is an excise or privilege tax on the retail seller, based on the gross receipts from sales of tangible personal property at retail in the state. Section 6016 defines tangible personal property as ". . . personal property which may be seen, weighed, measured, felt, or touched, or which is in any other manner perceptible to the senses," and section 6012, defining gross receipts and excluded items, states in subdivision (b) "The total amount of the sale or lease or rental price includes all of the following: [¶] (1) Any services that are a part of the sale."

The term "sale" generally includes any transfer of title or possession of tangible personal property for a consideration (§ 6006, subd. (a)) and more specifically, "[a] transfer for a consideration of the title or possession of tangible personal property which has been produced, fabricated, or printed to the special order of the customer." (§ 6006, subd. (f).)

Pursuant to section 7051 defendant has adopted various administrative regulations that concern the sales and use tax in specific types of transactions. (Cal. Admin. Code, tit. 18, § 1500 et seq.)

California Administrative Code, title 18, section 1501 states in pertinent part: "Persons engaged in the business of rendering service are consumers, not retailers, of the tangible personal property which they use incidentally in rendering the service. Tax, accordingly, applies to the sale of the property to them. . . . [¶] The basic distinction in determining whether a particular transaction involves a sale of tangible personal property or the transfer of tangible personal property incidental to the performance of a service is one of the true objects of the contract; that is, is the real object sought by the buyer the service per se or the property produced by the service. . . . [¶] Examples of service enterprises and regulations pertaining thereto will be found in regulations which follow."

California Administrative Code, title 18, section 1502 specifically deals with automatic data processing services and equipment. Subsection (2) of subdivision (d) of that section (hereinafter keypunching regulation) states in perti-

---

[3]Section 6051 states: "For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers at the rate of 2½ percent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail in this state on or after August 1, 1933, and to and including June 30, 1935, and at the rate of 3 percent thereafter, and at the rate of 2½ percent on and after July 1, 1943, and to and including June 30, 1949, and at the rate of 3 percent on and after July 1, 1949, and to and including July 31, 1967, and at the rate of 4 percent on and after August 1, 1967, and to and including June 30, 1972, and at the rate of 3¾ percent on and after July 1, 1972, and to and including June 30, 1973, and at the rate of 4¾ percent on and after July 1, 1973, and to and including September 30, 1973, and at the rate of 3¾ percent on and after October 1, 1973, and to and including March 31, 1974, and at the rate of 4¾ percent thereafter."

nent part: ". . . agreements providing solely for keypunching; keypunching and keystroke verification; or keypunching, providing a proof list and/or verifying of data are regarded as contracts for the fabrication of punched cards and sales of proof lists. Charges therefor are taxable, whether the cards are furnished by the customer or by the service bureau."

Plaintiff contends that defendant, through administrative regulation, has extended the sales tax beyond that which the Legislature has intended. Plaintiff asserts that defendant does not have the right to tax an activity that was not deemed taxable under the enabling statutes. It continues that since keypunching constitutes a nontaxable *service* rather than a taxable sale of keypunch cards, the keypunching regulation must be held an unconstitutional act of legislation. The contention is not persuasive.

The linchpin of plaintiff's argument is that section 6006, subdivision (f), the enabling legislation underlying the keypunching regulation, is inapplicable to keypunch cards since the term "fabricate" cannot include punched cards. The word "fabricate" means "to form by art and labor. . . ." (Webster's Third New Internat. Dict. (1965) p. 811.) Even the dictionary definition submitted by plaintiff includes "to make." Therefore, we hold that the word "fabricated" as used in section 6006, subdivision (f) must be construed in its broadest sense.

In the instant case plaintiff received raw data from its customer with instructions to transpose the data onto cards that could be read by the customer's computer. Starting with blank keypunch cards plaintiff so altered the cards through the keypunching process that they could be used to transfer the data into the customer's computer. We can only conclude that plaintiff produced tangible property to the special order of its customers pursuant to section 6006, subdivision (f).

This conclusion is consistent with results in similar California cases. In *People* v. *Grazer* (1956) 138 Cal.App.2d 274 [291 P.2d 957], the court held that the transfer of X-ray films and the radiologist's findings which accompanied the films from the radiologist to the physician constituted a taxable sale. In reaching this conclusion the court stated that "the raw materials consumed in producing that which [the physician] ordered may have cost the laboratory only a very small part of the charge made. The expense of the producer of the pictures is almost entirely the cost of the skilled services of the radiologist and the technicians and the use of equipment which is generally quite costly. But the price charged for all taxable transfers is more often than not largely a charge for services rendered in connection with the tangible object transferred." (*Id.*, at p. 278.)

The same reasoning was followed in *Albers* v. *State Board of Equalization* (1965) 237 Cal.App.2d 494 [47 Cal.Rptr. 69] where the court held that the work of a commercial draftsman making drawings for architects, engineers and business firms based on specifications and data furnished by customers constituted a sale of tangible personal property within the meaning of section 6006, subdivision (f).

Finally, in *Simplicity Pattern Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 900 [167 Cal.Rptr. 366, 615 P.2d 555] our Supreme Court held that tangible property may be taxed on the basis of its total value even though virtually all of the value is attributed to an intangible element such as intellectual content. In the course of its decision, the court stated: "Yet by no means does the regulation [section 1501] support plaintiff's broad theory that a sale becomes nontaxable whenever its principal purpose is to transfer the intangible content of the physical object being sold." (*Id.*, at p. 909.)

Plaintiff cites *Bullock* v. *Statistical Tabulating Corp.* (Tex. 1977) 549 S.W.2d 166, a Texas Supreme Court case, for the proposition that keypunching constitutes a service and not a sale of tangible personal property. However, in reaching its conclusion the Texas court noted that decisions from other jurisdictions show a divergence of opinion. (*Id.*, at p. 169.)

■ Although the decision of a court in a sister state on a similar statutory provision is ordinarily persuasive, it need not be followed if the reasoning is unsound or contrary to California policy. (*Acco Contractors, Inc.* v. *McNamara & Peepe Lumber Co.* (1976) 63 Cal.App.3d 292, 296 [133 Cal.Rptr. 717].) ■ In California, the evolution of case law dealing with sales tax law leads us to our present conclusion that tangible personal property such as keypunched cards may be taxed on their total value even though their primary value is attributed to an intangible element such as keypunching services.

The judgment is affirmed.

Rouse, Acting P. J., and Grodin, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 29, 1983. Grodin, J., did not participate therein. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.