[No. A050006. First Dist., Div. One. Dec. 20, 1991.]

MCI AIRSIGNAL, INC., Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

COUNSEL

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Timothy G. Laddish, Assistant Attorney General, Richard F. Finn and Julian O. Standen, Deputy Attorneys General, for Defendant and Appellant.

Morrison & Foerster, Franklin C. Latcham, Charles J. Moll III and Steven E. Turner for Plaintiff and Respondent.

## OPINION

**DOSSEE, J.**—This appeal presents an issue of first impression in California: whether the Sales and Use Tax Law applies to receipts from the furnishing of paging devices in conjunction with telephone paging services. We conclude it does not.

### FACTS

During the years involved in this appeal, 1974-1981, MCI Airsignal, Inc., (hereafter MCI) was in the business of providing telephone paging services. Each customer was assigned a specific telephone number purchased by MCI from the local telephone company. To reach the customer, a caller dialed the customer's telephone number from any telephone. The call was received by an MCI computer, which then sent a message to MCI's radio transmitting towers. The towers converted the message to a unique radio signal, which was transmitted through the airwaves to the customer's paging device. The

radio signal activated the customer's paging device, either by a tone-only notification or a tone-voice notification, whereby a 10-second voice message could be received.

MCI provided this paging service, along with the paging devices, to its customers for a flat monthly fee. To obtain the service the customer completed an "Application for Service," which became the contract upon acceptance by MCI. The agreement provided that MCI retained complete title, control and reasonable access to the paging devices. If a customer's paging device needed repairs, MCI would repair it or replace it free of charge.

MCI did not provide pagers except in conjunction with the paging service. The pagers provided by MCI would not operate with another paging service.

## PROCEDURAL HISTORY

Under the Sales and Use Tax Law, only tangible personal property is subject to taxation; services are not. In 1973, the State Board of Equalization determined that MCI's predecessor was providing a telephone service and, hence, receipts from its customers were exempt from sales tax.

In subsequent audits, the board reversed its position and determined that MCI was required to pay sales tax on that portion of its receipts attributable to the rental of paging devices to its customers. MCI paid the additional taxes for the period of January 1, 1974, through June 30, 1981, and filed claims for refunds.

In 1983, the board denied these claims, and MCI then filed a complaint in superior court seeking a refund. The case was tried by the court without a jury based on agreed facts and a few witnesses called by MCI. The trial court concluded that MCI was entitled to a refund of $395,649 for the taxes paid on rental of the paging devices. The Board appeals.

## DISCUSSION

### I.  *Service or Sale*

The Sales and Use Tax Law (Rev. & Tax. Code, § 6001 et seq.) imposes a privilege tax upon the retail seller, based on gross receipts of sales of tangible personal property. (§ 6051.)[1] A "sale" includes a lease of tangible personal property. (§ 6006, subd. (g).) " 'Tangible personal property' means

---

[1] Unless otherwise indicated, all statutory references are to the Revenue and Taxation Code.

personal property which may be seen, weighed, measured, felt, or touched, or which is in any other manner perceptible to the senses." (§ 6016.) There is no dispute that personal services are not subject to sales or use tax.

A controversy arises, however, when an individual or business entity uses tangible property in connection with a service. If the business is providing purely a service and the property is incidental, then the business entity is the consumer, not the retailer, of the tangible property and must pay sales tax when *acquiring* the property; the transfer of the tangible property to the service customer is not subject to tax. (*Sternoff* v. *State Bd. of Equalization* (1980) 103 Cal.App.3d 828, 832 [164 Cal.Rptr. 715]; Cal. Code Regs., tit. 18, § 1501 [hereafter regulation 1501].)

Regulation 1501, promulgated by the State Board of Equalization, recognizes this distinction between a service and a sale of property. The regulation declares that the test for determining whether a business activity is a service or whether it is a sale of tangible property depends upon the "true object" of the transaction.[2]

The question before this court is whether the board correctly interpreted the Sales and Use Tax Law and the regulation promulgated pursuant thereto when it determined that MCI's receipts from its customers using the paging devices were taxable. That question is one of law for this court. (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].) Resolution of this question requires us to apply the "true object" test. (*Id.*, at p. 96.)

The "true object" test was applied by the Supreme Court in *Culligan Water Conditioning* v. *State Bd. of Equalization, supra,* 17 Cal.3d 86, where the plaintiff had furnished its customers with water conditioning units. The Supreme Court rejected the plaintiff's argument that its income was from a service (and therefore not subject to sales tax): "[T]he crucial point of inquiry is whether the true object of the transaction is the finished article or

---

[2]Regulation 1501 provides in pertinent part: "The basic distinction in determining whether a particular transaction involves a sale of tangible personal property or the transfer of tangible personal property incidental to the performance of a service is one of the true objects of the contract; that is, is the real object sought by the buyer the service per se or the property produced by the service. If the true object of the contract is the service per se, the transaction is not subject to tax even though some tangible personal property is transferred. For example, a firm which performs business advisory, record keeping, payroll and tax services for small businesses and furnishes forms, binders, and other property to its clients as an incident to the rendition of its services is the consumer and not the retailer of such tangible personal property. The true object of the contract between the firm and its client is the performance of a service and not the furnishing of tangible personal property."

the performance of labor. . . . [¶] We think it quite clear that the true object of the water conditioning contract is the furnishing of the exchange unit, which, by itself and without requiring any performance of human labor, softens the water." (*Id.*, at p. 96; see also *Intellidata, Inc.* v. *State Bd. of Equalization* (1983) 139 Cal.App.3d 594, 598 [188 Cal.Rptr. 850] [sale of keypunch cards subject to sales tax].)

More recently, the test was applied in *General Business Systems, Inc.* v. *State Bd. of Equalization* (1984) 162 Cal.App.3d 50, 56 [208 Cal.Rptr. 374], where the court held that the sale of keypunch cards was not taxable because the true object of the transaction was provision of a service design and development of custom computer programs. (See also *City of Gilroy* v. *State Bd. of Equalization* (1989) 212 Cal.App.3d 589, 603 [260 Cal.Rptr. 723] [sale of lottery ticket to gambler is not subject to sales tax because gambler is buying an opportunity to win a prize, but sale of printed tickets to Lottery Commission is subject to taxation as a sale of tangible property].)

In the present case, the trial court found that the true object of the transactions between MCI and its customers was the provision of paging services.[3] We conclude that decision was correct. Although there is no California case law directly on point, cases from other jurisdictions support the trial court's ruling.

In *White* v. *Storer Cable Communications* (Ala.Civ.App. 1987) 507 So.2d 964, the court used the true object test to decide that cable television converter boxes were not subject to a tax imposed upon tangible personal property being leased or rented. The court reasoned that the essence of the arrangement between the cable company and the subscriber was to provide cable television programming; the converters had no function apart from giving subscribers access to the cable service.

In *Nashville Mobilphone Co., Inc.* v. *Woods* (Tenn. 1983) 655 S.W.2d 934, the court held that radio telephones and paging devices furnished to customers in connection with mobile communication services were not being held for sale to the customers and therefore were subject to sales tax upon

---

[3]The trial court explained its finding as follows: "The court finds that the true object of the agreements between Airsignal and its customers is the provision of the paging service, not the paging device. Unlike the water softening equipment in *Culligan*, Airsignal's paging devices have no function whatsoever independent of Airsignal's ongoing services. Without the continuous beeper service, Airsignal's customers would obtain no benefit from the paging devices. Airsignal provides paging devices only to those customers who subscribe to its paging service, and it does not offer a reduced price to customers who may own their own pagers." (Fns. omitted.)

purchase from the supplier. The court reasoned that supplying the equipment was incidental to the taxpayer's primary function of providing paging and mobile radio services. "[The] equipment in the hands of the customer is completely without value to the customer except in connection with and as a part of the service for which the customer subscribes." (655 S.W.2d at p. 937.)

The same approach was taken in a slightly different context in *Xerox Corp. v. United States* (1981) 228 Ct. Cl. 406, 656 F.2d 659. In deciding whether Xerox Corporation was entitled to an investment tax credit on its photocopying machines, the court had to decide whether the machines were an integral part of a service, and the court concluded they were. The court emphasized that Xerox retained ownership of the machines and would exchange them as needed; further, the fees paid by customers were based on the copies made, not the duration of use of the machine. The court concluded that Xerox was providing services in order to produce photocopies, and the machines were a component of that operation.

So, too, in the present case, MCI was providing paging services. MCI retained ownership of the paging devices and was responsible for their maintenance and repair. The customers paid a flat fee for the services; there was no separate charge for the use of the paging device. The essence of the arrangement between MCI and its customers was the provision of paging services. Without the services, the paging devices were useless. The "true object" of the transaction was the service.

The Board argues that a paging device is analogous to a radio and a radio, too, is useless without the broadcasts provided by radio stations. The distinction, however, is that the retail seller of radios does not also provide radio programs. The radio is not sold as part of a package of services.

## II. *Allocation*

The rates charged by MCI for its paging services are regulated by the Public Utilities Commission, which authorizes specific charges based on message service, maintenance charges and equipment rental. Thus, MCI keeps internal books which show separate charges for these items. The customer, however, is charged a flat rate.

The Board's position is that even if the paging devices were used in providing a service, MCI should pay tax on the amount allocable to the equipment rental. The trial court correctly rejected this contention.

Regulation 1501 states: "If the true object of the contract is the service per se, the transaction is not subject to tax even though some tangible personal

property is transferred." There is no provision for allocating tax to a portion of the receipts. In fact, the Sales and Use Tax Law contemplates that if the property is used incidentally in rendering a service the business entity rendering service is a consumer, not a retailer of the property. Tax liability arises upon the acquisition of the property from the supplier, not when it is transferred to the service customer. "Persons engaged in the business of rendering service are consumers, not retailers, of the tangible personal property which they use incidentally in rendering the service. Tax, accordingly, applies to the sale of the property to them." (Reg. 1501.)[4]

The board argues that because MCI neither paid sales tax when acquiring the paging devices nor elected to pay a use tax, the leases of the pagers to its customers constituted "sales." The board relies on provisions of the Sales and Use Tax Law that a lease of tangible personal property is a "sale" unless the lessor paid sales tax to its supplier or elects to pay use tax measured by the cost to the taxpayer. (§§ 6006.1, 6010, subd. (e), 6010.1.) This argument ignores Regulation 1501, which excludes from the Sales and Use Tax Law any transaction that involves the incidental transfer of property in connection with rendering a service. If the transfer of property is merely incidental to a service, the transfer is not a sale subject to tax, even if the transfer could be called a "lease."

In summary, we conclude, as did the trial court, that the true object of MCI's transactions with its customers is to furnish telephone paging services. The paging devices are incidental thereto, and no tax is due on the transfer of those pagers to the service customers.

The judgment is affirmed.

Newsom, Acting P. J., and Stein, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 12, 1992.

---

[4]At oral argument we were informed that MCI itself manufactures the paging devices.