[No. B141232. Second Dist., Div. Two. Mar. 6, 2001.]

MODERN PAINT AND BODY SUPPLY, INC., Plaintiff and Respondent,
v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

704

COUNSEL

Bill Lockyer, Attorney General, Richard W. Bakke and Thomas G. Heller, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of Philip Garrett Panitz, Philip Garrett Panitz and Ryan D. Schaap for Plaintiff and Respondent.

## OPINION

**NOTT, J.**—The State Board of Equalization (the Board) appeals from a summary judgment awarding a refund of sales taxes, interest, and penalties in favor of Modern Paint and Body Supply, Inc. (Modern). Modern is a business that sells products used in auto body repair. It sold items to auto repair shops which the repair shops consumed or used up during the auto repair process and which were not physically incorporated into the repaired cars, such as sandpaper, masking tape, and paint thinner. Both parties refer to these items as "supplies." The Board, following audits showing that Modern had not paid sales tax on the sales of supplies to auto repair shops, determined that the sales were subject to sales tax. The trial court disagreed, finding that Modern's sales of the supplies were sales for resale and thus not subject to sales tax under California Code of Regulations, title 18 (Regulations), section 1668, subdivision (c)(1). We conclude that Modern's sales of supplies to auto repair shops were not sales for resale, and therefore will reverse the summary judgment.

### PROCEDURAL BACKGROUND

After unsuccessfully pursuing its administrative remedies and paying assessed deficiencies, Modern filed an action for a refund of the amount, $129,426.80, that it had paid to the Board. Modern alleged that because the sales in question were sales for resale by the purchaser, the sales were not taxable under section 6007 of the Revenue and Taxation Code; that the Board had improperly invalidated resale certificates received from Modern's wholesale buyers under section 6092 of the Revenue and Taxation Code and section 1668, subdivision (a)(1) of the Regulations; that Modern had established that all paints and supplies sold to body shops were subjected to sales taxation when the items were resold to retail consumers under Regulations section 1668, subdivision (c); and that Modern was not negligent in its attempts to comply with the statutes, rules, and regulations governing the sales and use tax.

The Board answered the complaint and denied its allegations. Following discovery, the parties stipulated to most of the relevant facts and filed cross-motions for summary judgment. After hearing, the trial court granted Modern's summary judgment motion and denied the Board's summary

judgment motion. It entered judgment in favor of Modern, and this appeal followed.

FACTUAL BACKGROUND

The following facts are not controverted by the parties. The Board conducted two audits of Modern's records. The first audit period covered July 1, 1987, through March 31, 1991. The second audit covered October 1, 1991, through March 31, 1995. In both audits, the Board sampled Modern's customer invoices to determine a percentage of error, which was then attributed to total sales for the audit periods. Modern does not challenge the validity of the Board's audit methodology for either audit period.

In both audits, the Board concluded that Modern had paid insufficient sales tax. The Board based its rulings upon Modern's failure to pay sales tax on supplies sold to auto repair shops, which do not become a component part of a repaired automobile. The percentage of error calculated by the Board was entirely attributable to the Board's disallowance of Modern's claimed sales for resale of supplies to repair shops.

For the first audit period, Modern has declarations and repair shop estimates indicating that nine of the 39 repair shops mentioned in the Board's sample of Modern's invoices included a separate line item charge for "paints and materials" on the repair shops' estimates to their customers. The paints and materials charge was calculated according to a formula based on the labor hours spent on the job. It was meant to cover the costs of the paints and supplies used and consumed in the repair process. The repair shops collected sales tax reimbursement on the paints and materials charges, but Modern could not verify that the sales tax reimbursement was actually remitted to the Board.

For the second audit period, Modern has similar evidence from seven of the 29 repair shops mentioned in the Board's sample of Modern's invoices. For both audit periods, the remaining repair shops mentioned on Modern invoices reviewed by the Board either are out of business or otherwise unreachable (24 in the first audit, 17 in the second), refused to cooperate (four in each of the audits), or provided customer estimates without supporting declarations (two in the first audit, one in the second).

Resale certificates are documents which state a buyer's intention to sell the goods purchased at resale. A resale certificate accepted in good faith rebuts the presumption that a sale of tangible personal property is taxable. (Rev. & Tax. Code, § 6091.) Modern did not claim to have valid resale

certificates for the sales at issue in the first audit. For the second audit, Modern had resale certificates on file from automobile repair shops that identified the items purchased from Modern and covered by the certificates as: "All Purchases Including/Excluding Supplies."

Modern claimed administratively that it obtained the resale certificates at issue based upon erroneous advice from the Board. The Board did not give such advice in writing, however, and wrote a letter to Modern in October 1991, citing Board literature which stated that general resale certificates for supply sales to repair shops were unacceptable. The Board allowed Modern to rely on resale certificates during the one-month period between the claimed verbal misinformation and the letter. A 1989 Board publication states that auto body repair shops should not purchase supplies for resale. A 1993 publication told auto supply stores that they would owe tax on supply sales, absent a resale certificate listing the specific supply items that the repair shop indicated it would resell. Modern received the 1989 literature, and the Board sent the 1993 literature to Modern as a matter of course with one of Modern's 1993 quarterly sales and use tax returns.

## DISCUSSION

We review the trial court's grant of a motion for summary judgment de novo. (*Campbell v. Arco Marine, Inc.* (1996) 42 Cal.App.4th 1850, 1855 [50 Cal.Rptr.2d 626].) Neither party disputed any fact stated in the other party's statement of undisputed material facts. ■ To the extent the issues on this appeal involve the interpretation of statutes and regulations, they are issues of law which are subject to independent review on appeal. (*Farm Sanctuary, Inc. v. Department of Food & Agriculture* (1998) 63 Cal.App.4th 495, 501 [74 Cal.Rptr.2d 75].) Summary judgment is proper "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

I. *The presumption that sales of tangible property are taxable*

Revenue and Taxation Code section 6006, subdivision (a) defines a sale as "[a]ny transfer of title or possession, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration. 'Transfer of possession' includes only transactions found by the board to be in lieu of a transfer of title, exchange, or barter." Sales tax is due on any retail sale of tangible personal property. (*Id.*, § 6051.) A retail sale is a sale of tangible property for any purpose except resale in the regular course of business. (*Id.*, § 6007.) A retailer's sales are

presumed to be taxable until the contrary is established. (*Id.*, § 6091; see *Yamaha Corp. of America v. State Bd. of Equalization* (1999) 73 Cal.App.4th 338, 348 [86 Cal.Rptr.2d 362].)

A seller is relieved of sales tax liability (1) if the seller obtains a resale certificate from the purchaser in good faith (Rev. & Tax. Code, § 6092); or (2) if he presents satisfactory evidence that the sales were sales for resale (see *Honeywell, Inc. v. State Bd. of Equalization* (1982) 128 Cal.App.3d 739, 747-748 [180 Cal.Rptr. 479]).[1] California law does not impose sales tax on the performance of services. (See Rev. & Tax. Code, §§ 6006, 6007; *Navistar Internat. Transportation Corp. v. State Bd. of Equalization* (1994) 8 Cal.4th 868, 874 [35 Cal.Rptr.2d 651, 884 P.2d 108].) ■ Modern has the burden of proving that the Board's assessments were wrong. (*Honeywell, Inc. v. State Bd. of Equalization, supra*, at p. 744.)

## II. *Sale for resale*

■ We assume for purposes of this analysis that Modern's evidence is sufficient to show that it sold supplies to repair shops which they consumed in the course of auto repairs and for which they charged their customers in the form of a line item for "paints and materials" calculated as a percentage of the labor cost. We conclude that under Regulations section 1546, the repair shops are not retailers of the consumed supplies.

■ In interpreting regulations, the court seeks to ascertain the intent of the agency issuing the regulation by giving effect to the usual meaning of the language used so as to effectuate the purpose of the law, and by avoiding an interpretation which renders any language mere surplusage. (*Brewer v. Patel* (1993) 20 Cal.App.4th 1017, 1021 [25 Cal.Rptr.2d 65].) Regulations section 1546 states that repairmen are retailers under the following conditions: "If the retail value of the parts and materials furnished in connection with repair work is more than 10 percent of the total charge, or if the repairman makes a separate charge for such property, the repairman is the retailer and tax applies to the fair retail selling price of such property. [¶] If the retail value of the property is more than 10 percent of the total charge, the repairman must segregate on the invoices to his customers and in his records the fair retail selling price of the parts and materials from the charges for labor of repair, installation, or other services performed. 'Total charge' means the aggregate of the retail value of the parts and materials furnished or consumed in making the repairs, charges for installation, and charges for labor

---

[1]A third ground exists, where the seller shows that the property has been used or consumed by the purchaser and the purchaser has paid the use tax. (Regs., § 1668, subd. (c)(3).) Modern does not rely upon this third ground, and it is not in issue here.

of repair or other services performed in making the repairs, including charges for in-plant or on-location handling, disassembly and reassembly. It does not include pick-up or delivery charges. [¶] If the retailer does not make a segregation, the retail selling price of the parts and materials will be determined by the board based on the information available to it."[2]

 The trial court reasoned that the supplies in issue are "parts or materials furnished in connection with the repair work." We disagree. Regulations section 1546 distinguishes between property furnished and property consumed. In order for a sale to occur, property must be furnished. The total charge, on the other hand, includes the value of parts and materials "furnished or consumed" in making the repairs. The supplies in issue were not furnished to the customer, but were consumed in the repair. Thus, the repair shops were not retailers of the supplies, and Modern's sales to them were not sales for resale.[3]

Regulations section 1501, which addresses service enterprises generally, also supports the Board's position. Section 1501 states: "Persons engaged in the business of rendering services are consumers, not retailers, of the tangible personal property which they use incidentally in rendering the service. Tax, accordingly, applies to the sale of the property to them. If in addition to rendering service they regularly sell tangible personal property to consumers, they are retailers with respect to such sales and they must obtain permits, file returns and remit tax measured by such sales. If their purchases of tangible personal property are predominantly for consumption rather than for resale, they should not give resale certificates covering such purchases

---

[2]This regulation was amended in 1979, deleting the final sentence which previously stated: "The repairman is prohibited, pursuant to regulation 1700, from collecting sales tax reimbursement on the total charge since any such reimbursement applicable to the portion of the total charge which represented repair or installation labor would constitute excess sales tax reimbursement." Due to an editorial error, the amendment did not appear in Barclays Official California Code of Regulations until December 1999. (See History foll. Regs., § 1546.) The trial court was not informed of the amendment. Board literature received by Modern in 1989 included a copy of the amended regulation. The Board has not waived the position that the regulation was amended. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1064-1065 [31 Cal.Rptr.2d 358, 875 P.2d 73] [requests for judicial notice should not be used to circumvent the normal briefing process].)

[3]Modern does not take the position that title to the supplies passed to the repair shops' customers before they were used by the repair shops. (Cf. Regs., § 1618 ["Sales to U.S. Government supply contractors of tools, equipment, direct consumable supplies and overhead materials are sales for resale if the United States takes title pursuant to a United States government supply contract prior to any use of the property by the contractor to perform the function or act for which the property was designed or manufactured. Accordingly, tax does not apply to such sales even though the property does not become a component part of the tangible personal property furnished, fabricated, or manufactured by the contractor."].)

but should follow the procedure prescribed in the regulation governing 'Tax-Paid Purchases resold.' "

■ In determining whether a transfer of tangible property is merely incidental to a service under Revenue and Taxation Code section 6006 and Regulations section 1501, the court looks to whether furnishing the property was the "true object" of the transaction: " 'The basic distinction in determining whether a particular transaction involves a sale of tangible personal property or the transfer of tangible personal property incidental to the performance of a service is one of the true objects of the contract; that is, is the real object sought by the buyer the service per se or the property produced by the service.' " (*Navistar Internat. Transportation Corp. v. State Bd. of Equalization*, supra, 8 Cal.4th at pp. 875-877 [the true object test does not apply where a transfer of documents was not incidental to the performance of a service]; and see *MCI Airsignal Inc. v. State Bd. of Equalization* (1991) 1 Cal.App.4th 1527, 1530-1531 [2 Cal.Rptr.2d 746] [provision of a pager as part of a pager service is not a sale of the pager to the customer].) Here, however, there was no transfer of the supplies to the customer. The repair shops transferred neither possession nor title to any supplies. (Rev. & Tax. Code, § 6006, subd. (a).) The supplies were consumed in performance of the repair. Consequently, the repair shops are consumers of the supplies, and the true object test does not apply.

■ Courts have also looked to the primary intent of the purchaser in determining whether a product was purchased for resale. (See *Kaiser Steel Corp. v. State Board of Equalization* (1979) 24 Cal.3d 188, 194 [154 Cal.Rptr. 919, 593 P.2d 864].) In *Kaiser Steel Corp. v. State Board of Equalization*, the court held that where certain materials were used to remove impurities from molten metal, and portions of those materials were recovered and resold as slag, the materials were not purchased for resale because the main purpose in acquiring them was to aid in the manufacturing of steel. In a decision more closely analogous to the present case, *People v. Puritan Ice Co.* (1944) 24 Cal.2d 645 [151 P.2d 1], the court held that where vegetable packers used ice to preserve the produce for shipment, even if they charged the purchasers separately for the ice, there was no sale for resale. The court reasoned that the purported sale of the ice was merely an incidental part of the sale of the vegetables. Here, of course, the primary intent of the repair shop is to repair the automobile. The consumption of masking tape or sandpaper as a part of the repair process is incidental to the main object.

A number of other regulations distinguish between materials which become a part of the manufactured or processed property, and materials which

are used or consumed for purposes of sales tax. For example, Regulations section 1525, subdivision (b), states that sales to manufacturers of property "for the purpose of incorporating it into the manufactured article to be sold," are not taxable sales; that is, they are sales for resale. Under Regulations section 1531, which pertains to fur dressers and dyers, chemicals used in the process are classified either as property that will be consumed in the process and whose sale to the fur dresser is consequently taxable or as property which is not and that may be purchased under resale certificates.[4]

We conclude that the sales of supplies to repair shops were not sales for resale under Regulations section 1546.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment appealed from is reversed. Neither party is entitled to summary judgment. Each party to bear its own costs of appeal.

Boren, P. J., and Cooper, J., concurred.

A petition for a rehearing was denied March 26, 2001, and respondent's petition for review by the Supreme Court was denied June 20, 2001.

---

[4]Fur dressers and dyers are considered consumers of all products used in connection with their work where the furs belong to others, however. (Regs., § 1531, subd. (h).)

*See footnote, *ante*, page 703.